UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                                    Case No. GK 16-05230-jtg

DOUGLAS R. HILL and                                       Chapter 7
SANDRA L. HILL,
                                                          Hon. John T. Gregg
                        Debtors.
_____/

**OPINION REGARDING TRUSTEE'S
OBJECTION TO EXEMPTIONS**

APPEARANCES:  Robert R. Kopen, Esq., KOPEN LAW OFFICES, Centreville, Michigan, for Douglas R. Hill and Sandra L. Hill; Thomas C. Richardson, Esq., LEWIS REED & ALLEN, P.C., Kalamazoo, Michigan, for Thomas C. Richardson, Chapter 7 Trustee.

This matter comes before the court on an objection to exemptions filed by Thomas C. Richardson, the Chapter 7 trustee (the "Trustee") for the estate of Douglas Hill (the "Debtor") and Sandra Hill.  In his objection, the Trustee asserts that the Debtor has improperly claimed an exemption in the proceeds of a preferential transfer because the transfer at issue was voluntary under section 522(g) of the Bankruptcy Code.  The Debtor filed a response to the objection in which he argues that the exemption is appropriate because the preferential transfer was involuntary.  For the following reasons, the court shall overrule the Trustee's objection.

**JURISDICTION**

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**BACKGROUND**

In March 2011, the 3B Judicial District Court for the State of Michigan (the "State Court") entered a judgment in the amount of approximately $10,000 against the Debtor.  On September 7, 2016, Cavalry Portfolio Services, LLC (the "Judgment Creditor"), as the initial judgment creditor

or perhaps its assignee, obtained a Request and Order to Seize Property from the State Court (the "Seizure Order").

The Seizure Order authorized a sheriff, deputy sheriff or court officer (the "Court Officer") to seize and/or sell any personal property of the Debtor not subject to exemption under Michigan law. The Seizure Order further stated that personal property includes, "but is not limited to motor vehicles or money, wherever located." Upon seizing and/or selling the personal property, the Court Officer was permitted to apply sufficient funds to satisfy his statutory fees and expenses. He was thereafter required to turnover the remaining proceeds to the Judgment Creditor. Finally, the Seizure Order stated that the Court Officer must provide the Debtor "with a receipt of all money paid" and "an inventory of the property taken."

Approximately two weeks after the Seizure Order was entered, the Court Officer traveled to the Debtor's residence to execute the Seizure Order. Upon the Court Officer's arrival, the Debtor and his dog greeted the Court Officer, whereupon the Court Officer threatened to shoot the Debtor's dog. The Court Officer advised the Debtor that he was acting pursuant to the Seizure Order, a copy of which he later provided to the Debtor.

With those pleasantries exchanged, the Court Officer proceeded to examine the contents of the Debtor's garage. After the Court Officer informed the Debtor that he could seize anything he wanted, the Debtor explained that certain property in his garage did not belong to him, including two lawn mowers that he was servicing. The Court Officer then told the Debtor that he was going to contact the Court Officer's friends who would arrive with a truck to transport the property subject to seizure. However, in lieu of seizing the property, the Court Officer advised the Debtor that he would be willing to accept $4,000 in cash.

The Debtor's brother, who was at the Debtor's residence, immediately drove to the home of the Debtor's father where he obtained a check in the amount of $4,000.  The Debtor's father made the check payable to the Debtor, not the Court Officer.  During this time, the Court Officer and the Debtor waited at the Debtor's home.  When the Debtor's brother returned with the check, the Court Officer followed the Debtor to the Debtor's bank.  The Debtor cashed the check from his father while the Court Officer remained in his vehicle in the bank's parking lot.

After the Debtor cashed the check, the Debtor handed $4,000 in cash to the Court Officer. Upon receipt, the Court Officer prepared the Report, a copy of which was given to the Debtor. The Report stated that the Seizure Order was served on the Debtor on September 22, 2016.  Under the heading "Report of Collection Activity," the Report explained that the Seizure Order was satisfied in part and that the total amount collected was $4,000.[1]  Finally, the Report provided details of the statutory fees and expenses to which the Court Officer was entitled for his services and that after deducting such fees and expenses, the amount of $3,548.80 would be paid to the Judgment Creditor.

On October 14, 2016, the Debtor and Ms. Hill filed a joint petition for relief under Chapter 7 of the Bankruptcy Code.  Sometime after the petition date, the Judgment Creditor remitted $3,548.80 in response to the Trustee's demand for the return of $3,548.80 as an alleged preferential transfer.[2]  On January 11, 2017, the Debtor amended his schedules to claim the recovery as exempt

---

[1]     The Report also stated, somewhat confusingly, that the Seizure Order was not satisfied in full because "Defendant Unemployed Buying Home Banks First Merit Paid to Keep All Assets."  The court cannot discern the meaning of this statement from the proofs.

[2]     The parties stipulated that the transfer of $4,000 was preferential for purposes of section 522(g).  *See*, *e.g.*, *Glass v. Hitt (In re Glass)*, 60 F.3d 565, 568 (9th Cir. 1995) (recovery under section 522(g) does not require formal adversary proceeding); *In re Hicks*, 342 B.R. 596, 599-600 (Bankr. W.D. Mo. 2006) (same).

under section 522(d)(5).  Shortly thereafter, the Trustee filed his objection [Dkt. No. 19] (the "Objection"), to which the Debtor responded [Dkt. Nos. 20, 27].[3]

The court held an initial hearing on March 10, 2017 but was unable to render a decision at that time given the uncertainty as to the facts at issue.  In order to better understand the facts, the court, after consultation with the parties, entered a scheduling order [Dkt. No. 29] allowing the parties to file a stipulation as to facts and admissibility of documents.  The parties filed their stipulation on April 5, 2017 [Dkt. No. 33].[4]  The Debtor also filed a supplemental brief [Dkt. No. 35], while the Trustee elected to rely on his Objection.[5]

After carefully considering the arguments, the court shall overrule the Objection and find in favor of the Debtor.

## **DISCUSSION**

Section 522(g) of the Bankruptcy Code provides, in pertinent part, that:

> (g)     Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if –
>
> > (1)(A)  such transfer was not a voluntary transfer of such property by the debtor. . .

11 U.S.C. 522(g)(1)(A).  As such, if the trustee avoids a voluntary transfer by the debtor, the debtor is not entitled to claim an exemption in the recovered property.

---

[3]     The Trustee also objected to the exemption of Ms. Hill in the amount of $1,775 on the same grounds.  In response to the Objection, Ms. Hill waived her right to claim an exemption in the recovery.

[4]     The Trustee and the Debtor stipulated to admit into evidence certain facts, the Seizure Order, a Report of Collection Activity Under Order to Seize Property (the "Report") and an affidavit from the Debtor.  The Trustee did not object to the admissibility of the testimony on any evidentiary basis, including hearsay.  The Trustee also did not seek to introduce any evidence to refute the testimony of the Debtor as set forth in the affidavit.

[5]     The parties agreed that an evidentiary hearing was not necessary.

The objecting party has the burden of demonstrating that the transfer was voluntary, at which point the burden shifts to the debtor to demonstrate that the transfer was involuntary. *In re Diamantis*, 2014 WL 1203182, at *3 (Bankr. N.D. Ohio Mar. 24, 2014) (citations omitted). The ultimate burden of proof, however, remains with the objecting party. *Id*. (citing Fed. R. Bankr. P. 4003(c)).

In light of the parties' stipulations, the only issue presented in this case is whether the transfer of $4,000 in cash by Debtor was voluntary. The term "voluntary" is not defined by the Bankruptcy Code.[6] Therefore, the term must be read in a manner that is consistent with its ordinary meaning. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (citation omitted). Black's Law Dictionary defines "voluntary" as unconstrained by interference, unimpelled by another's influence, done by design, intention or purpose, and having knowledge of essential facts. *Black's Law Dictionary* 1575 (6th ed. 1990).

The Sixth Circuit Court of Appeals has previously considered the meaning of the term "voluntary" in the context of section 522(h), which incorporates by reference section 522(g). The Sixth Circuit observed:

> [w]hile the Code does not define this term, the bankruptcy courts "have generally concluded . . . that an involuntary transfer 'occurs when . . . property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment.'" *Funches v. Household Fin. Consumer Discount Co. (In re Funches)*, 381 B.R. 471, 493 (Bankr. E.D. Pa. 2008) (quoting *Berman v. Forti*, 232 B.R. 653, 656 (D. Md. 1999); *see also In re Dipalma*, 24 B.R. 385, 387 (Bankr. D. Mass. 1982) (noting that a transfer created "by operation of law" is involuntary). Here, the judgment was not a consent judgment, but a default judgment. Accordingly, the state-court conversion of [the debtor's] manufactured home to an improvement to real property was involuntary because it was accomplished by operation of law without consent.

---

[6] The legislative history is of limited assistance and provides only that the fixing of a judicial lien is an example of an involuntary transfer. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 362 (1977).

*Dickson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585, 593 (6th Cir. 2011).

Other courts have similarly found transfers to be involuntary where they occurred by operation of law. *See In re Yarber*, 522 B.R. 328, 330 (Bankr. D. Or. 2014) (transfer of bail bond deposit to prevent incarceration was involuntary); *Maus v. Joint Twp. Dist. Memorial Hospital (In re Maus)*, 282 B.R. 836, 838 (Bankr. N.D. Ohio 2002) (garnishment constituted involuntary transfer); *Via v. Colonial Am. Nat'l Bank (In re Via)*, 107 B.R. 91, 94-95 (Bankr. W.D. Va. 1989) (loan obtained and used to satisfy creditor to prevent garnishment was involuntary); *see also Seidel v. First Nat'l Bank of Palmerton (In re Seidel)*, 27 B.R. 347, 352 (Bankr. E.D. Pa. 1983) (transfer involuntary where critical facts concealed from debtor).

In addition, courts have generally agreed that even consensual transfers may be involuntary if they involve fraud, duress, material representation or coercion, among other things. *See*, *e.g.*, *In re Pfiester*, 449 B.R. 422, 425 (Bankr. D.N.M. 2011); *see also Davis v. Suderov (In re Davis)*, 148 B.R. 165, 174 (Bankr. E.D.N.Y. 1992) (creditor's actions accompanied by extraordinary pressure).

In this case, the Trustee argues that the transfer was voluntary because the Debtor intentionally paid the funds to the Court Officer in order to avoid execution. As support for his position, the Trustee relies heavily on an unpublished decision from this court. *In re Schrader*, Case No. 12-06343 (Bankr. W.D. Mich. Oct. 30, 2012).[7]   In *Schrader*, a judgment creditor obtained an order from the state court authorizing a court officer to seize the debtors' vehicle to satisfy a money judgment. After the vehicle was seized by the court officer, the debtors borrowed funds from their parents and remitted them to the judgment creditor within ninety days of the petition date so that their vehicle would be released. When the debtors filed for bankruptcy, they

---

[7]    Although *Schrader* is a bench opinion, the Trustee and the Debtor spent significant time analogizing to and distinguishing from it, respectively.

exempted the proceeds from the recovery of the funds they paid for the release of their vehicle. The trustee then objected to the debtors' exemption of those proceeds.

The *Schrader* court first noted that there were two transfers to consider. The first transfer occurred when the court officer seized the vehicle. The court noted that this was not the transfer at issue. Rather, the transfer at issue occurred when the debtors paid funds to the judgment creditor in exchange for the release of their vehicle. The court reasoned that the transfer of the funds by the debtors to the judgment creditor was voluntary because it did not occur by operation of law. Instead, the court concluded that the debtors chose to pay the funds to the judgment creditor.

The Debtor does not disagree with the reasoning in *Schrader*. Instead, the Debtor contends that the Trustee's reliance on *Schrader* is misplaced, as the facts in this case are distinguishable from those in *Schrader*. The Debtor notes that in this case and unlike in *Schrader*, he paid funds to the Court Officer at the time the Court Officer was acting pursuant to the Seizure Order.

This court agrees with the Debtor. The facts in this case distinguish it from *Schrader* and other decisions concluding that transfers were voluntary. *See In re Pfiester*, 449 B.R. at 424-25 (marital settlement agreement approved by state court was voluntary); *In re Corwin*, 135 B.R. 922, 923-25 (Bankr. S.D. Fla. 1992) (grant of replacement lien was voluntary); *In re Rollins*, 63 B.R. 780, 782 (Bankr. E.D. Tenn. 1986) (grant of security interest was voluntary); *Bettis v. Bus. & Prof. Adjustment Co. (In re Bloom)*, 28 B.R. 571, 572 (Bankr. D. Or. 1983) (agreement to void judicial lien in exchange for security interest transformed transfer from involuntary to voluntary); *Huebner v. Trapp (In re Huebner)*, 18 B.R. 193, 195 (Bankr. W.D. Wisc. 1982) (wage assignment to avoid collection efforts by creditor was voluntary).

In this case and at all relevant times, the Court Officer was acting pursuant to the Seizure Order entered by the State Court. *See* Mich. Comp. Laws § 600.6025; Mich. Ct. R. 3.106. The

Court Officer arrived at the Debtor's residence and informed the Debtor of his intent to seize the personal property located in the Debtor's garage.  As an alternative, the Court Officer stated that he would accept cash in the amount of $4,000.  Faced with the decision of whether to allow the Court Officer to seize his (and apparently others) personal property or pay $4,000, the Debtor chose the latter.  It makes little difference that the Debtor paid $4,000 to the Court Officer in order to avoid having his personal property seized.  The fact that the Court Officer presented the Debtor with a choice as to the type of property used to satisfy the Seizure Order did not transform the transfer from involuntary to voluntary.  *Contra In re Bloom*, 28 B.R. at 572 (voiding judicial lien in exchange for security interest transforms transfer from involuntary to voluntary).  Regardless of the Debtor's decision, the result would be the same – the Debtor would be deprived of his property because of the authority that the Court Officer derived from the Seizure Order.

In addition, the Court Officer expressly stated in the Report that the transfer of $4,000 was made pursuant to the Seizure Order.[8]  In the Report, the Court Officer declared that he collected $4,000, deducted his statutory fees and expenses from the property seized, characterized his actions as an "asset search" conducted pursuant to the Seizure Order, and certified that he was authorized to seize the funds pursuant to applicable law.  *See* Mich. Ct. R. 3.106.  Finally, the Report clearly states that the amount of $3,548.80 was paid to the Judgment Creditor on October 4, 2016 in partial satisfaction of the Seizure Order.

The Debtor's argument is further supported by the sequence and timing of events.  Unlike in *Schrader*, the Court Officer did not depart from the Debtor's residence in possession of the Debtor's property and turn it over to the Judgment Creditor or market it for sale.  Instead, the Court Officer waited at the Debtor's residence while funds in an amount necessary to satisfy the Court

---

[8]     The Court Officer used the official form of report approved for use by the state courts for the State of Michigan when executing on judgments.

Officer's demand were obtained.  The Court Officer proceeded to follow the Debtor to the bank and waited in the parking lot while the Debtor cashed the check.  Relying on the evidence presented, the court infers that the Court Officer was not going to depart empty- handed.  Rather, it is clear that the Court Officer intended to carry out the Seizure Order one way or another.

Based on the aforementioned facts, the court concludes that the transfer of funds by the Debtor to the Court Officer, and ultimately the Judgment Creditor, occurred by operation of law, and was thus involuntary for purposes of section 522(g).[9]  The Debtor is therefore entitled to claim the amount of $3,548.80 as exempt pursuant to section 522(d)(5).

## CONCLUSION

For the foregoing reasons, the court shall overrule the Objection to the Debtor's claim of exemptions.  The court shall enter a separate order consistent with this Opinion.

---

[9]    The Debtor also asserted that he was coerced by the conduct of the Court Officer.  Because the court has concluded that the transfer occurred by operation of law, it need not consider whether the transfer was a byproduct of fraud, material representation, duress, or coercion.  The Court Officer's threat to shoot the Debtor's dog and take property belonging to third persons is nonetheless troubling.  *Cf. In re Bloom*, 28 B.R. at 573 (threat to collect on judgment by legal means not coercive).

**Signed: April 24, 2017**





John T. Gregg
United States Bankruptcy Judge